Taga Hodomi. Taga Hodomi. Thank you very much. Good morning, Your Honor. Peter Shea. I'd like to reserve two minutes, if I may. Peter Shea, appearing for the plaintiffs and the appellants. A section entitled Exceptions to the Federal Tort Claims Act provides that the provisions of this chapter shall not apply to, quote, Article 46 relating to claims or suits in admiralty against the United States. Plaintiffs read this exception using its plain language and ordinary meaning. Congress provided that a claim, and all parties agree that plaintiffs possess a claim, quote, for which a remedy is provided, unquote, by either the PVA or the SAA, were exempted from the waiver of immunity provided by the Federal Tort Claim Act. The district court in this case clearly held that three of the plaintiffs, the parents of the deceased and the estate of the deceased, not citizens of the United States, and therefore, quote, may not bring a claim under the PVA or SAA because of the Act's reciprocity provision. The government itself agreed with that, and in its brief to this court, the government said the mandatory reciprocity requirements of the maritime statutes cannot be satisfied, unquote, by the three plaintiffs that I mentioned. That's their brief at page 16. So there's no doubt, and I think everybody in this case, including the plaintiffs, agree that at least those three plaintiffs simply do not have a remedy because of the reciprocity provision. May I interrupt you, Mr. Shea? Yes, sir. If one of those plaintiffs is the estate of the deceased woman, why is that estate necessarily an Iranian citizen? I believe that it would be because she herself was not a citizen, and I do not believe that her estate would have citizenship status when the deceased herself was not a citizen, although I confess that issue was not litigated in the lower court. But the only claim remaining is a claim which she could not hold, which is a wrongful death case for herself. Correct. And it's a claim which vested another person. As I read the record, her husband has an ancillary estate going. He's an American citizen. He's the administrator of that claim. So that's possible, Your Honor, and all I can say is that issue was not thoroughly looked into. It clearly would not impact on the arguments relating to the parents of the deceased. It would have an impact on the reciprocity disability. As I understand, what it would impact on would be the claim of her estate. Yes. Correct. And nobody delved into that question. It was one of several that kind of slid by everybody. Counsel, I understand that there are two claims here, first the negligent search and then the failure to communicate. And as to negligent search, everybody agrees that that is an admiralty claim. Everybody would agree that the search on the water was an admiralty claim. And so on that, the question would be either as to the parents or as to the estate, depending on the outcome of that tricky question, whether or not the parents' claims, whether they have a remedy under the PBA or the SAA or not. If they do not have a remedy, then, of course, our argument is that since they do not have a remedy under the plain language of the Federal Tort Claim Act, nothing bars them from pursuing their claims under the Federal Tort Claim Act. Just to add one thing, and then I'm going to come back to your point. Why can't you say they have a remedy but the remedy is barred? I don't believe that they have a remedy but the remedy is barred because, indeed, then they would have no remedy whatsoever. And I think Congress could have easily stated, as it has done over and over again in different statutory schemes, had Congress wanted to achieve that result, Congress simply could have excluded the words for which a remedy is provided. And Congress could have easily said, it would have been save some trees, save some paper, quicker and easier. Congress could have simply said exceptions to the Federal Tort Claim Act provides that the provisions of this chapter shall not apply to any claims relating to claims or suits in admiralty against the United States. So Congress had no reason to add the language, in essence, if you have a remedy provided by these statutes. But under your interpretation, if there is a remedy, it means the plaintiff wins. If the plaintiff loses because of lack of liability, then there's no remedy. Well, no, I think if there is a remedy, what that means is that a plaintiff would have a right to go to trial on that remedy. I don't think it would mean that they would have to prevail on that remedy. A right to go to trial, but what if they're barred by the statute of limitations? If they're barred by the statute of limitations, I think they had a remedy. But by failing to meet the statute of limitations, they effectively abandoned that. So we're not arguing that if a party sat on its rights, had a remedy. I think that that is what Congress must have contemplated. I think it's important to recognize that for many, many years, people could and did, for some 20 years after the enactment of the Federal Tort Claim Act, could and did bring their claims either under the Maritime Act or under the Federal Tort Claim Act. And that was not deemed impermissible as they did under the Tucker Act and under the Federal Tort Claims Act. You know, by the same force of reasoning, if someone was an American citizen, they would have a remedy. And then let's say they gave up that citizenship and became Iranian citizens. You could say, you know, they had a remedy and they gave up the remedy. It was a remedy and it's just not available to them now by reason of citizenship. I think that that's probably correct, that if a person had a case like this pending, and while this case was pending. No, before the case was pending, originally were American citizens. I think that that's correct. I think that that's absolutely correct. I think a person could change their status by changing their citizenship. I think that's a highly unlikely scenario, but I think theoretically. And then you would say they could not sue under the Federal Tort Claims Act under that scenario. If a person was a citizen, then they obviously could. The reciprocity provisions would not apply to them and they could sue under the S.S.A. But before they had the accident, they gave up their American citizenship and became foreign citizens. Then they could not sue under the S.S.A. if the reciprocity provisions apply to them. And under our reading of the statute, and again, this is just a plain reading of the statute. There's nothing in the legislative history. There's nothing in the decisions of the courts that would indicate otherwise, the Supreme Court or otherwise. Then under those circumstances, yes, I think they would be limited to a claim under the FTCA. That's not a favorable way to go. In other words, I think what Congress did here was in essence provided people with a preferred remedy. And that preferred remedy was to go under the maritime laws. I mean, that has numerous preferences. You do not have to file an administrative claim. You do not run up against a potential discretionary function exception, which you do in the Federal Tort Claims Act. You have more liberal venue provisions. You have far more liberal pleading provisions. And what Congress in essence said is if you have a claim, what it said in the Federal Tort Claim Act is if you have a remedy under these more beneficial maritime laws, then we want you to channel your claims through that. On the other hand, there's no indication that Congress ‑‑ and that applies to citizens and noncitizens alike. Everybody is channeled through that mechanism if you have a remedy under that mechanism. On the other hand, there's nothing to indicate that Congress ‑‑ Congress doesn't have a reciprocity provision in the Federal Tort Claim Act. I think you read it that the Federal Tort Claims Act does not apply to maritime claims. It does not apply. So you go to the maritime claims. And then you have to ‑‑ and then you're on your own once you get to the maritime claims. You qualify or you don't qualify. Right. I mean, that's clearly what the government suggests. That's what the government, yes. And that's what they say. That's part of that reasoning. And that's what the district court said. And the principal reason, Your Honor, why we believe you cannot go down that road is a simple one, and it's just because that's not what Congress said. Congress didn't ‑‑ Congress added words. If Congress had not added those words, that you have a remedy under this other statutory scheme, then the government's position would be 100 percent correct. So Congress ‑‑ I don't think Congress can be deemed to have added these words for no reason whatsoever. There's some reason why Congress did that. And I think the reason that they did it, and they were not necessarily thinking about aliens when they did this or non‑citizens. Under the Federal Tort Claims Act, they say go to maritime law. We don't cover maritime law. No, they don't say that. And, again, had they said that, I wouldn't be here. What they said was if you have a remedy under the Maritime Act, then go to the Maritime Act. They didn't have to say if you have a remedy. They could have just said if you have any claim, you're out of here. And that's not what they said. They added the words if you have a remedy under those provisions, then that's the avenue you have to take. And they wanted to do that precisely because there are significant advantages and possibly some disadvantages, but it's an entirely separate scheme to going under the maritime laws. And so had Congress wanted to achieve that result, it's not that the words were there to insert. It's that they wouldn't have added the words if you have a remedy under that law, then go down that road. Thank you, Mr. Shea. Your time has expired. Thank you. We'll now hear from the other side. May I please go on? I'm Philip Burns. I'm the attorney in charge of the Admiralty Office, West Coastal Office of the U.S. Department of Justice. And, of course, the real party here is not the kayak company but the United States. First, Judge Way, you had a question about the state and whose rights. If you take a look at Blanco, which is cited, B-L-A-N-C-O, which is cited in our brief, you'll see that the rights, they don't exist. They cannot be transferred over, let's say, to an administrator who's a U.S. citizen. But they don't exist while the woman's alive, but they exist when she dies. No, they don't because they're banned by the reciprocity requirement so that it cannot be transferred. In other words, Iranian, we're talking about the estate or the parents, they didn't have a right during the lives of any of the three of them. It cannot be transferred over in any way to somebody, let's say, an administrator for the estate or for the parents in some way. And the Blanco case is a prime example of that. Also, just to clear up something, Mr. Shea mentioned that discretionary function does not apply in admiralty matters. That's absolutely wrong. The Huber case, H-U-B-E-R case in the Ninth Circuit right here applies, and it does. Discretionary function does apply. Next, throughout the plaintiff's brief, they discuss Sutherland and the construction of legislation and how this should apply as the clear language. What they ignore is under the Sutherland concepts and is widely accepted throughout law, a specific section applies over a general. At best, the FDCA section is a general section. The section on reciprocity requirement under the Public Vessels Act is a specific section, specifically controls the issue of this. Also, which is not mentioned, but there's a major controlling case on this, and that's the Continental Tuna case. Continental Tuna was treating the issue of reciprocity requirements by a foreign ship owner suing the United States in a collision case. The Supreme Court held, and that's why the brief of the plaintiff has this badly mixed up. The Supreme Court held that reciprocity under the Public Vessels Act was not done away with by the 1960 amendments to the Suits and Admiralty Act, and those are two separate waivers of immunity, Public Vessels Act and the Suits and Admiralty Act. Public Vessels Act has the reciprocity clause, incorporates the consistent provisions of the Suits and Admiralty Act, the latter having preceded the Public Vessels Act by four or five years, 1920 versus 1924, 1925. All the Supreme Court said there was that the 1960 amendments, which were made to take in all Admiralty matters, that was the purpose, was to include all Admiralty matters in Admiralty under the Suits and Admiralty Act as appropriate. And I'll give you a distinction there. Did not do away with the Public Vessels Act. The Public Vessels Act stayed, the reciprocity requirements stayed, and the Supreme Court held that the reciprocity clause exists, and it is not done away with by the 1960 amendments, and at the time the FTCA stood as it presently stands, and the Supreme Court did not say that this reciprocity clause, you can't meet it in the Public Vessels Act, therefore it's not Admiralty, therefore we go to the FTCA. It said there is no cause of action, no suit. Well, you know, I read the Federal Court Claims Act, the plain language of it says, the provisions of this chapter shall not apply to any claim for which a remedy is provided by so forth and so on. Well, I look at the claim here, he doesn't have a remedy, because of the non- So he really has no remedy, does he? Well, I'm sure during our long careers we've both run through many statutes which we would have had better worded, but if you take the history of the FTCA and the remedies, and you take the history Go into the history when a literal plain meaning of a statute shows that the claimant has no remedy because of a lack of citizenship. There was no waiver of immunity by the United States in reciprocity. You again have to get into the history of why this occurred. This is dealing with public vessels, which are basically war vessels, and to waive immunity by sovereigns was a very unique thing in those days, 1920s. If you get into the legislative history and the theory of the legislation, if the reading of the statute is plain and obvious on its face, you have to acknowledge that he has no remedy in maritime law. Fundamentally, yes. Then why do we go into the history of why, you know? Because there was no waiver of immunity. He can't get in under the FTCA, he cannot get in under the public vessels act. There is something that the plaintiff has missed here also, and that is another simple thing. Both the Grubart, which I'll get to, and Continental Tuna, and these other cases, did not say that the suits in the Admiralty Act would not apply. Where this plaintiff has gotten all fouled up is what is Admiralty, and where the impact is felt, and the application of Admiralty law. The suits in the Admiralty Act does not have a reciprocity requirement, and that's not incorporated in from the public vessels act. It doesn't work in reverse. Any actions alleged by the plaintiff, which did not involve a public vessel here, such as the alleged claims of negligence on shore of communications and supposed miscommunications, were suits in the Admiralty actions. They're Admiralty cases. And could have been brought, you say? They could have been brought under the suits in the Admiralty Act. But we have a statute of limitations issue there, right? But the statute of limitations is the same for both PVA and Grizzly. I don't see why you're not arguing the statute of limitations, pure and simple. Well, we are arguing that, too. His argument, of course, is, Your Honor, that under the FTCA, that he filed a claim timely, at least to some of the claims, and that, therefore, under the FTCA, which has a different running of statute of limitations, time for denial, six months after denial to file your action, when does the denial occur? It's got a whole bunch of, it's a different regimen. So his argument is, I met it under FTCA. Our argument is, it is not FTCA. And those communications on shore were Admiralty, because you look historically for Admiralty, it's the traditional tort concept of where does a tort occur, not where you shot the arrow, but where the arrow landed type of thing that we all learned in law school. And then how that... The cause of action is incomplete until damage occurs. It's where the impact is. Where was the impact here? The impact here was felt on navigable waters. The failure to rescue, the death of a wife, this sort of thing. So it's clearly Admiralty. This would have been suits in Admiralty Act in terms of communications. Why? And this, again, is why the 1960 amendments came into effect. Because there was no government vessel or cargo involved. This is prior to 1960 on the suits in Admiralty Act. So that they amended in 1960 to include anything that a private party would be liable for in Admiralty or be subject to suit in Admiralty, the government would be. And the communications did not involve a vessel. He said that's not what the fault was. As a matter of fact, they waived any claim involved in alleged negligent rescue. What they're saying here is that the communications were negligent in failing to send out ships or to do anything. That would have been suits in Admiralty Act. They had a cause of action there. That was missed. The Grubart case, which is cited throughout the plaintiff's brief, that's also an error. What did that involve? That's the reverse of the traditional Admiralty. That involves a ship causing damage, impact ashore. And the extension act, which is the Grubart, extended Admiralty jurisdiction to impact ashore caused by a vessel on navigable waters. It did not change the impact concept of traditional Admiralty, which is where if the tort is consummated or would have been consummated on navigable waters, that's Admiralty. That's not Grubart. That has nothing to do with this case. Fundamentally, that's it. And so far as estoppel, I'll just try to run through it. My time is up. There is no estoppel here, be it equitable tolling or equitable estoppel. There is nothing here that the United States hid in terms of the question of the man being unconscious or what have you for three days and in a hospital. Traditional tort, cause of action arises on the date of the incident. Nothing there. So there's no extension here for anything that there would be. In terms of the in-laws not knowing of what the cause was, there was nothing hidden here about what the Coast Guard did or did not do. The son-in-law went over and saw them after the death, didn't tell them about it. They have the same attorney for both the son-in-law and the in-laws, and they're going to claim the lack of knowledge. So that is fundamentally, I mean, the rest is covered in my brief. Thank you, Counsel. The case just argued will be submitted for decision, and we will now hear argument in United Transportation Union.
judges: O'scannlain, Cowen, Bea